**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Edward May, | No. CV-14-00409-PHX-NVW |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ......................................... 3

LEGAL STANDARDS ON FEDERAL HABEAS REVIEW ........................... 5

ANALYSIS ......................................................................................................... 7

    I.    History of Arizona's Child Molestation Law .......................................... 7

    II.   Arizona Deprived May of Due Process of Law and of the Right to Be Found Guilty Only by Proof Beyond a Reasonable Doubt ................................... 12

        A.   Due Process Limits States in Placing Burdens of Proof on Defendants .......... 13

        B.   The Arizona Law Fails Under the Typical Supreme Court Criteria for Rejecting Unconstitutional Burden-Shifting ..................................... 16

           1.   Sexual Intent Has Always Been Essential to the Crime of Child Molestation ................................................................. 17

           2.   Arizona's "Freakish Definition of the Elements" without Any "Sinister Significance" ....................................... 19

           3.   Arizona Repudiated Its Own History When It Shifted the Burden of Disproving Sexual Intent to Defendants ........................ 21

        C.   Application of Due Process Analysis to the Arizona Burden-Shifting Scheme .................................................................. 21

    III.  Cause and Prejudice: Ineffective Assistance of Counsel ..................... 25

        A.   Prejudice .................................................................................... 25

           1.   The State Courts Unreasonably Applied Federal Law ................. 26

           2.   It Is Likely May Would Have Obtained a Different Outcome ..................... 29

        B.   Deficient Performance .............................................................. 32

    IV.  Constitutional Challenge ....................................................................... 35

    V.   Harmless Error ...................................................................................... 36

**INTRODUCTION**

Petitioner Stephen May was convicted under Arizona's child molestation law, which does not require the state to prove the defendant acted with sexual intent. Rather, once the state proves the defendant knowingly touched the private parts of a child under the age of fifteen, to be acquitted the defendant must prove his *lack* of sexual intent by a preponderance of the evidence. Arizona stands alone among all United States jurisdictions in allocating the burden of proof this way. Arizona is the only jurisdiction ever to uphold the constitutionality of putting the burden of disproving sexual intent on the accused.

Pending before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Michelle H. Burns (Doc. 35) regarding May's Petition for Writ of Habeas Corpus filed pursuant to Title 28, United States Code, section 2254 (Doc. 1). The R&R recommends that the Petition be dismissed with prejudice. The Magistrate Judge advised the parties that they had fourteen days to file objections to the R&R. (Doc. 35 at 118 (citing Rule 72(b), Federal Rules of Civil Procedure; Rule 8(b), Rules Governing Section 2254 Proceedings).) May filed objections on October 20, 2015. (Doc. 38.) Defendants Charles Ryan and Thomas Horne ("the State") filed a response on November 23, 2015. (Doc. 45.) May filed a reply on December 22, 2015. (Doc. 48.)

The parties also submitted supplemental briefing on two cases decided since then. On June 29, 2016, May submitted a supplemental brief in light of the United States Supreme Court's decision in *Dietz v. Bouldin*, — U.S. —, 136 S. Ct. 1885 (2016). (Doc. 54.) The State responded. (Doc. 55.) May then submitted supplemental briefing on the Arizona Supreme Court's decision in *State v. Holle*, 240 Ariz. 300, 379 P.3d 197 (2016), on October 21, 2016. (Doc. 59.) A response and a reply were filed. (Docs. 60, 63.)

The Court has considered all the briefing and reviewed the R&R de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that the court must make a de novo determination of those portions of the Report and Recommendation to which specific objections are made). May raised numerous claims in his petition, and for the most part

the Court agrees with the Magistrate Judge's determinations, accepts the recommended decision within the meaning of Rule 72(b), and overrules May's objections. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge"). May also raised concern that the R&R appeared to copy large volumes of text "virtually verbatim" from the State's briefing, including several background facts that were incorrect. (Doc. 38 at 13.) While this is concerning, none of the affected portions, including factual errors, make a material difference.

This Court does reject the R&R's conclusions as to two of May's claims and its ultimate recommendation to dismiss his petition with prejudice. The R&R did not entertain May's claim that the burden-shifting statute and jury instructions are unconstitutional. The reason given is that May did not raise the claim at trial and did not show cause and prejudice for defaulting. But May has in fact shown cause and prejudice for the default based on ineffective assistance of his trial counsel.

The state courts on collateral review also disavowed making any ruling on the merits of May's constitutional claim. Because no state court adjudicated the merits of May's constitutional claim, the question must be considered de novo here. But even if measured under the deferential standard of 28 U.S.C. § 2254(d)(1), an adjudication against May would be contrary to, or involve an unreasonable application of, clearly established Federal law, as decided by the Supreme Court of the United States.

The State deprived May of his constitutional right to due process of law and proof of guilt beyond a reasonable doubt. By crafting its child molestation law as it did, Arizona spared itself from proving sexual intent and instead burdened May with disproving it. Absent sexual intent, however, all the conduct within the sweep of the statute is benign, and much of it is constitutionally protected. Nothing in the revised elements of the crime distinguishes wrongful from benign from constitutionally protected conduct. One must look to the defendant's burden of proof to see what this statute is really about, which is the same thing it has always been about: the defendant's sexual

intent.  This shifting to the accused of the burden of disproving everything wrongful (here the only thing wrongful) about the prohibited conduct cannot stand unless there are no constitutional boundaries on a state's ability to define elements, transubstantiate denials into affirmative defenses, and be master of all burdens of proof.  The State argues precisely that in defense of May's conviction, that element-defining and burden-shifting are no longer part of justiciable constitutional law.  But there are boundaries, some well-settled boundaries, and this statute crosses them at a brisk sprint.

**BACKGROUND AND PROCEDURAL HISTORY**

The R&R recites the detailed history of this case.  (Doc. 35 at 2-40.)  To provide context for the discussion below, the following summary may be helpful.

On January 16, 2007, Stephen May was convicted in Arizona superior court on five counts of child molestation under sections 13-1410(A) and 13-1407(E) of the Arizona Revised Statutes.  He was also acquitted on two counts.  Section 13-1410 criminalizes "molestation of a child," which consists of "intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age."  Ariz. Rev. Stat. § 13-1410(A) (2009).  "Sexual contact" is defined as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."  Ariz. Rev. Stat. § 13-1401(3) (2015).  The prohibition does not require that the intentional touching have a sexual intent, though section 13-1407(E) provides that as an "affirmative" defense, a defendant may assert "that the defendant was not motivated by a sexual interest."  Ariz. Rev. Stat. § 13-1407(E) (2008).  Arizona law also places the burden on the defendant to prove the affirmative defense—that is, to disprove that he had a sexual intent—by a preponderance of the evidence.  Ariz. Rev. Stat. § 13-205(A) (2006).

May, a former school teacher and swim instructor, lived in a Mesa, Arizona apartment complex where he often taught children how to swim and played with them at the community pool.  The charges against him arose from accounts by four children who

said he touched them inappropriately.  May's trial attorney, Joel Thompson, made no motion to dismiss the charges before trial.  He did request a jury instruction that as a matter of statutory construction under section 13-1410(A) the state bears the burden of proving beyond a reasonable doubt that May touched the children with sexual intent. Thompson did not assert that the law would be unconstitutional if it placed the burden of disproving that on May.  The State argued that because sexual intent is not a stated element under section 13-1410(A), the defendant has the burden of proving his own lack of sexual intent by a preponderance of the evidence.  Accepting the State's position, the trial judge instructed the jury that the State must prove beyond a reasonable doubt only the described touching and the victim's age but that they must acquit if May proved by a preponderance of the evidence that the touching was not motivated by sexual interest.

After several days of trial, the jury deliberated for two days but could not reach a verdict.  (Doc. 35 at 21-22.)  They gave the judge several notes indicating they were deadlocked, and the judge accordingly declared a mistrial and dismissed them.  But just minutes after the proceedings were adjourned, the bailiff delivered a note stating that the jurors, who were still in the jury room gathering their things, wished to resume deliberations.  (Doc. 35 at 22.)  Neither side objected, and the jury reconvened.  After nearly a full day of additional deliberation, the jury convicted May on five counts and acquitted him on two.  (Doc. 35 at 23.)  (An eighth count was previously severed and eventually dismissed.)  May's attorney moved for new trial, arguing that the final jury instructions misstated Arizona law by requiring May to prove a lack of sexual intent. (Doc. 35 at 23.)  Once again, Thompson did not assert the law or the jury instructions were unconstitutional.  The judge denied the motion and later sentenced May to 75 years in prison, 15 years for each count.  (Doc. 35 at 24.)

After an unsuccessful direct appeal, May sought post-conviction relief in Arizona superior court.  This collateral review proceeding was his first chance under Arizona procedure to raise a claim of ineffective assistance of counsel.  *See State v. Spreitz*, 202 Ariz. 1, 3, 39 P.3d 525, 527 (2002) (holding that ineffective assistance of counsel may

1    not be presented until post-conviction review). May argued that Thompson provided

2    ineffective assistance at trial by not challenging the constitutionality of placing the

3    burden on him to disprove sexual intent. The superior court denied relief because of

4    procedural default without deciding the merits of the constitutional claim (Docs. 1-11; 1-

5    13), and the state appellate court affirmed on the decision below (Doc. 1-17). The

6    Arizona Supreme Court summarily denied review. (Doc. 1-20.)

7    **LEGAL STANDARDS ON FEDERAL HABEAS REVIEW**

8           A federal habeas court cannot review a state court's denial of relief based on

9    adequate and independent state law grounds. *Coleman v. Thompson*, 501 U.S. 722, 731-

10   32 (1991). Thus, a defendant defaults on any claim not presented to state courts in

11   accordance with the state's procedural rules, generally barring federal habeas review. *Id.*

12   at 731-32. Exceptions apply where the defendant shows cause and prejudice for the

13   default or a miscarriage of justice would result from upholding the default. *See Schlup v.*

14   *Delo*, 513 U.S. 298, 314-15 (1995). One way a petitioner can establish cause is by

15   showing the default resulted from ineffective assistance of counsel. *Murray v. Carrier*,

16   477 U.S. 478, 488 (1986).

17          May did not challenge the constitutionality of Arizona's child molestation statute

18   at trial, raising it for the first time in collateral proceedings. Since Arizona law required

19   him to raise it at trial, May cannot raise the claim here absent a showing of cause and

20   prejudice for his default.[1]  *See* Ariz. R. Crim. P. 32.2(a)(3) (precluding post-conviction

21   review of any claim that could have been raised at trial or on direct appeal). However,

22   May contends his trial attorney was ineffective in not challenging the constitutionality of

23

24   _____

25          [1] The Supreme Court has defined the other possibility, a "fundamental miscarriage
26   of justice," to mean, effectively, actual innocence. *See McCleskey v. Zant*, 499 U.S. 467,
     494 (1991) (limiting "fundamental miscarriage of justice" cases to "extraordinary
27   instances when a constitutional violation probably has caused the conviction of one
     innocent of the crime"). May has not met the exceedingly high bar for showing actual
28   innocence.

Arizona's child molestation law.[2]

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas will not lie on claims decided on the merits by a state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court unreasonably applies federal law by "unreasonably extend[ing] a legal principle from [Supreme Court] precedent to a new context where it should not apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The legal principles applied "must be found in the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (citation and internal quotation marks omitted). To meet this standard an application of federal law cannot be merely erroneous; it "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks omitted).

While federal courts may consider both the decision and the reasoning of the state courts, the Supreme Court has specified:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Harrington v. Richter*, 562 U.S. 86, 102 (2011).

This Court must therefore assess at the threshold whether the Arizona state courts committed either of the errors enumerated in section 2254 in rejecting May's contention of ineffectiveness of counsel to excuse his procedural default on his constitutional claim.

---

[2] May also argues his appellate counsel was ineffective for failing to raise the issue on direct appeal. (Doc. 2 at 80.) But because the constitutionality of Arizona's child molestation law was never raised at trial, May's appellate attorney was barred from raising it on appeal.

- 6 -

Ineffective assistance of counsel is measured by the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel must have performed deficiently, and this performance must have prejudiced the defendant.  *Id.*

**ANALYSIS**

**I.      History of Arizona's Child Molestation Law**

Discussion of May's ineffectiveness and merits claims first requires an overview of the history and current state of Arizona's child molestation statutes.

Separate from laws against sexual misconduct generally, Arizona's first prohibition specifically addressing child molestation appeared in the 1913 penal code:

> Any person who shall wilfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison not less than one year.

Rev. Stat. of Ariz. (Penal Code) § 282 (1913).[3]  That law had dropped out of the code by 1928, and not until 1965 did the state legislature pass a new law prohibiting sexual

---

[3] The Arizona courts identify the state's first child molestation prohibition as a 1939 statute making it a crime to "molest" a child.  *See State v. Holle (Holle I)*, 238 Ariz. 218, 223, 358 P.3d 639, 644 (Ariz. Ct. App. 2015) (citing 1939 Ariz. Sess. Laws, ch. 13, § 1), *vacated by State v. Holle (Holle II)*, 240 Ariz. 300, 379 P.3d 197 (2016).  The prohibition they cite, while entitled "MOLESTING SCHOOL CHILD," provides:

> Any person who annoys or molests a school child, or without legitimate reason therefor loiters on the grounds of any public school at which children are in attendance, or within three hundred feet thereof, shall be deemed a vagrant, and upon conviction fined not more than five hundred dollars, imprisoned in the county jail not more than six months, or both.

1939 Ariz. Sess. Laws, ch. 13, § 1.  In addition to coming twenty-six years after the 1913 statute, given the lenient punishment and lack of sexual context, the word "molests" in the 1939 statute likely did not refer to sexual contact but merely to the word's more traditional definition (operative both then and now): to "annoy" or "disturb."  *See, e.g.*, *Molest*, Webster's New International Dictionary of the English Language 1580 (2d ed. 1936) (defining "molest" as "[t]o interfere with or meddle with unwarrantably so as to injure or disturb").

conduct with children in particular.[4]  That year the legislature enacted section 13-653 of the Arizona Revised Statutes, providing:

> A person who molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person shall be guilty of a felony . . . .

1965 Ariz. Sess. Laws, ch. 20, § 3.  (The statute was renumbered to section 13-1410 in 1977.  *See* 1977 Ariz. Sess. Laws, ch. 142, § 66.)  While this prohibition did not expressly recite a sexual intent requirement, the Arizona Supreme Court took it to be implied, reasoning:

> [F]rom both the word "molest" itself and the general intent of the Legislature as may be grasped from a reading of the statute as a whole, a scienter requirement is apparent. As we have said before, where a penal

---

[4] Arizona's penal code may have still prohibited child molestation in the interim. In 1917, the legislature enacted another law making it a crime to

> wilfully commit any lewd or lascivious act upon or with the body or any part or member thereof, of any male or female person, with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of either of such persons, in any unnatural manner . . . .

1917 Ariz. Sess. Laws, ch. 2, § 1.  This law was "in addition to, and not in place of, any other provision of law." *Id.*, § 2.

The two key differences between this law and the 1913 molestation law were the former's application to "any male or female person" and the requirement that the lewd or lascivious act be conducted "in any unnatural manner," indications that the 1917 enactment likely targeted acts between same-sex partners. *See Unnatural Offense*, Black's Law Dictionary (2d ed. 1910) (defining "unnatural offense" as "[t]he infamous crime against nature; i.e., sodomy or buggery").  Perhaps assuming this law also covered child molestation, the 1928 Code reviser deleted the child-specific law, carrying forward only the more general 1917 enactment.  Rev. Code of Ariz. § 4651 (1928).  In 1965, the legislature amended the law, by then codified as section 13-652 of the Arizona Revised Statutes, providing for additional punishment where the acts in question were committed "upon or with a child under the age of fifteen years." 1965 Ariz. Sess. Laws, ch. 20, § 2.  After renumbering the statute to section 13-1412 in 1977, 1977 Ariz. Sess. Laws, ch. 142, § 68, the legislature amended it in 1985 to limit application only to sexual acts between adults.  1985 Ariz. Sess. Laws, ch. 364, § 23.  The statute was fully repealed in 2001.  *See* 2001 Ariz. Sess. Laws, ch. 382, § 1.

> statute fails to expressly state a necessary element of intent or scienter, it may be implied. . . . [T]herefore, it is certainly possible for a doctor or parent to touch the private parts of a child without "molesting" him by doing so, in which case the statute has not been violated.

*State v. Berry*, 101 Ariz. 310, 313, 419 P.2d 337, 340 (1966) (citation omitted). This remained the law for several decades.

Over the next twenty years, the legislature tweaked section 13-1410 in various ways, but "[Arizona] courts continued to treat sexual interest as an 'essential element' of the offense." *State v. Holle (Holle I)*, 238 Ariz. 218, 223-24, 358 P.3d 639, 644-45 (Ariz. Ct. App. 2015), *vacated by State v. Holle (Holle II)*, 240 Ariz. 300, 379 P.3d 197 (2016). *See, e.g.*, *State v. Brooks*, 120 Ariz. 458, 460, 586 P.2d 1270, 1272 (1978); *State v. Madsen*, 137 Ariz. 16, 18, 667 P.2d 1342, 1344 (Ariz. Ct. App. 1983); *State v. Anderson*, 128 Ariz. 91, 92, 623 P.2d 1247, 1248 (Ariz. Ct. App. 1980). In 1983, the legislature enacted section 13-1407(E) of the Arizona Revised Statutes, making lack of sexual interest an affirmative defense to child molestation. *See* 1983 Ariz. Sess. Laws, ch. 202 § 10. But at that time, Arizona law on proving affirmative defenses generally was that upon the defendant raising an affirmative defense, the burden shifted to the state to refute it beyond a reasonable doubt. *See, e.g.*, *State v. Duarte*, 165 Ariz. 230, 231, 798 P.2d 368, 369 (1990) ("[O]nce evidence of self-defense is presented, the burden is on the state to prove beyond a reasonable doubt that the conduct was unjustified."). Thus in practice, prosecutors had to prove sexual intent beyond a reasonable doubt. *See Holle I*, 238 Ariz. at 224, 358 P.3d at 645 (collecting authorities and noting, "For practical purposes . . . the enactment of § 13-407(E) did not significantly change the way courts treated sexual interest.").

Not until 1993 did the legislature amend sections 13-1410 and 13-1407(E) to their current forms. *See Holle I*, 238 Ariz. at 225, 358 P.3d at 646. Before then, the text of section 13-1410 began with the words "[a] person who knowingly molests a child . . ." before reciting the precise actions that were prohibited. *See* 1965 Ariz. Sess. Laws, ch.

20, § 3.  The 1993 update revised the language to read:

> A person commits molestation of a child by intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual contact with the female breast, with a child under fifteen years of age.

1993 Ariz. Sess. Laws, ch. 255 § 29.  The Arizona court of appeals held that the new language, which omitted the verb "molests," eliminated sexual intent as an element of the crime. *State v. Sanderson*, 182 Ariz. 534, 542, 898 P.2d 483, 491 (Ariz. Ct. App. 1995). But the court of appeals upheld the statute on the understanding that it shifted only the burden of production to the defendant—not the burden of proof or persuasion.  While it was the defendant's burden to assert lack of sexual intent as an affirmative defense, the state then bore the burden of proving sexual intent beyond a reasonable doubt.  *See id.*; *Holle I*, 238 Ariz. at 225, 358 P.3d at 646.  Thus, even under the *Sanderson* court's quibble on changing a verb ("molests") to a noun ("molestation"), whether a fact was treated as an element or the absence thereof as an affirmative defense had no practical consequence.  Either way the state had the burden of proof beyond a reasonable doubt.

In 1997, the Arizona legislature intervened again, not by changing anything in the child molestation statute, but by changing the burden of proof for all affirmative defenses across the board.  (Subsequent legislation excluded justification defenses, but that does not affect this case.  *See Holle I*, 238 Ariz. at 226 n.7, 358 P.3d at 647 n.7; 2006 Ariz. Sess. Laws, ch. 199, § 1-2.)  The new enactment of general application required that "a defendant shall prove any affirmative defense raised by a preponderance of the evidence . . . ."  1997 Ariz. Sess. Laws, ch. 136, § 4; Ariz. Rev. Stat. § 13-205(A) (2006). The 1997 amendments were the governing statutes when May stood trial in January 2007. (Doc. 22 at 163-64.)

The *Sanderson* precedent was grounded on Arizona's prior approach in which the State must disprove affirmative defenses.  Not until several weeks after May's conviction did an appellate court address child molestation in light of the 1997 legislation.  The court of appeals held that sexual intent continued not to be an element of child molestation

under Arizona law, but that section 13-205(A) now placed the burden on the defendant to prove by a preponderance of the evidence that he lacked sexual motivation. *State v. Simpson*, 217 Ariz. 326, 329, 173 P.3d 1027, 1030 (Ariz. Ct. App. 2007).

In 2015, a different panel of the court of appeals disagreed with *Simpson*, holding that lack of sexual intent is not an "affirmative defense" to child molestation under state law but just a "defense." *Holle I*, 238 Ariz. at 226, 358 P.3d at 647. *See* Ariz. Rev. Stat. § 13-103 (2006). The *Holle I* court held that for this reason the state still must prove sexual intent beyond a reasonable doubt. *Holle I*, 238 Ariz. at 226, 358 P.3d at 647. But the Arizona Supreme Court vacated that ruling in 2016, holding that lack of sexual intent is in fact an affirmative defense, which a defendant must prove by a preponderance of the evidence. *Holle II*, 240 Ariz. at 305, 379 P.3d at 202.

There is no indication the drafters of the 1997 amendment surveyed all affirmative defenses in Arizona law and reflected on the constitutionality of shifting the burden of proof on each one. Under the Arizona Supreme Court's decision in *Holle II*, the formality of labeling something an affirmative defense, which did not matter before, could now determine whether fundamental constitutional rights are accorded or denied for some defenses to some crimes.

Though no case had so held when May stood trial, as of today, ten years later, prosecutors bear the burden of proving beyond a reasonable doubt that the defendant "intentionally or knowingly" engaged in sexual contact with a child under fifteen, defined as any direct or indirect touching, fondling or manipulating of any part of the genitals or anus by any part of the body or by any object or causing a person to engage in such contact. *See* Ariz. Rev. Stat. §§ 13-1401(3), 13-1410(A). The defendant then bears the burden of proving by a preponderance of the evidence that such touching was without a sexual interest. The question arises here, as it no doubt will in other cases concerning essential denials relabeled as defenses to be proved, whether it is constitutional to put the burden of disproof on the defendant instead of the burden of proof on the state.

Of course, "proving lack of sexual intent" is exactly the same thing as "disproving

sexual intent." That same thing is proving a negative. However phrased, it is not proving anything affirmative. Putting the contradictory word "affirmative" in front of proof of a negative does not make it proof of an affirmative, though it may serve to confuse the reader. It is still what it is. This order uses both phrases interchangeably.

## II.   Arizona Deprived May of Due Process of Law and of the Right to Be Found Guilty Only by Proof Beyond a Reasonable Doubt

From the passage of section 13-205 until the conclusion of May's state court proceedings, no Arizona court—including those that reviewed May's conviction—addressed whether it is constitutional to require a child molestation defendant to disprove his sexual interest. In *Holle I* in 2015, the Arizona court of appeals avoided the question by distinguishing a "defense" from an "affirmative defense," and thereby held under state law that the prosecution must still prove sexual intent beyond a reasonable doubt. *Holle I*, 238 Ariz. at 226, 358 P.3d at 647. In its 3-2 decision vacating *Holle I*, the Arizona Supreme Court held that state law makes lack of sexual intent an affirmative defense to be proved by the defendant. *Holle II*, 240 Ariz. at 311, 379 P.3d at 208. The *Holle II* court also held, for the first time anywhere in the country, that putting such a burden on a child molestation defendant does not violate federal due process of law. *Id.* That federal law ruling, handed down by the state supreme court nine years after May's conviction and three years after his state court proceedings ended, is not entitled to deference from this Court. None of the state courts in May's case decided the federal constitutional question, so this habeas court must decide it as *res nova* if it reaches the question.

Because May failed to preserve the constitutional question at trial, this Court can reach the merits only if there was cause and prejudice for his default. May contends the default was the result of ineffective assistance of his trial counsel. (Doc. 2 at 86.) One prong of ineffective assistance of counsel is prejudice, i.e., that it is reasonably likely May would have obtained a different outcome absent the ineffectiveness, with "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 687. Prejudice, the likelihood of a different outcome, therefore depends largely on the

strength of the defaulted federal constitutional objection.

It therefore makes sense to discuss the law's constitutionality at the outset.  Merits discussion will do double service, once on the prejudice prong to escape the default and again to decide the constitutional claim itself.

**A. Due Process Limits States in Placing Burdens of Proof on Defendants**

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In criminal proceedings, this requires the state to "pro[ve] beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [the defendant] is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  States have wide latitude to determine what conduct to make a crime and what defenses to allow.  *See, e.g.*, *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986) ("[I]n determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive.").  A legislature's choice in this regard, including how it allocates evidentiary burdens, warrants deference "unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Patterson v. New York*, 432 U.S. 197, 201-02 (1977) (internal quotation marks omitted).

That said, the Supreme Court has repeatedly cautioned legislatures against skirting *Winship* by simply extracting essential elements from offenses and putting the burden on defendants to disprove them.  The Court first addressed this in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), in which it overturned a murder conviction where the jury was instructed it could infer "malice aforethought," an element of murder under Maine law, from a mere finding that the defendant committed an intentional killing.  *Id.* at 703. While the defendant could downgrade the offense to manslaughter by raising heat of passion as an affirmative defense, he carried the burden of proving heat of passion by a preponderance of the evidence.  *Id.* at 686.  The Court concluded that this "affirmatively shifted the burden of proof to the defendant" to disprove malice, an essential element of

murder, even though the Maine supreme court had upheld the burden shifting scheme as an integral part of the state's law.  *Id.* at 701.

Two years later a similar issue arose in *Patterson*, where the Supreme Court upheld a second-degree murder conviction under a New York statute that criminalized the intentional killing of another person without proof of malice.  432 U.S. at 198.  The statute permitted a defendant to reduce the charge by proving by a preponderance of the evidence that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse."  *Id.*  Malice need not be proved and lack of malice was not a permitted defense or rebuttal.  The defendant nonetheless contended the charge-reduction scheme impermissibly shifted the burden of proof by effectively requiring him to disprove malice.  *Id.* at 201.  The *Patterson* Court disagreed, distinguishing *Mullaney* on the grounds that since the New York statute did not expressly recite malice as an element of murder, the heat of passion defense did not negate an essential element.  *Id.* at 208-09.  Significantly, neither party in *Patterson* disputed that "the State may constitutionally criminalize and punish" the intentional killing of another person without more.  *Id.* at 209.  But the Court emphasized that while its decision "may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes[,] . . . there are obviously constitutional limits beyond which the States may not go in this regard."  *Patterson*, 432 U.S. at 210 (citation and internal quotation marks omitted).

Defying the plain language of *Patterson*, at oral argument the State defended May's conviction on the basis that legislatures have complete and unfettered authority to decide both the elements of and "affirmative" defenses to any crime.  According to the State, the constitutional limit is entirely a matter of form: lawmakers can force the accused to prove or disprove any fact as long as the legislature is careful to call the arrangement an "affirmative defense."  Or, as in this case, a legislature can take what was for decades an element of the crime (sexual intent) and relabel the denial of it as an affirmative defense, thereby freeing the state from having to prove it and making the

accused disprove it instead. At oral argument the State was candidly absolutist in maintaining that legislatures have unbounded capacity to shift to defendants the burden of disproving anything, subject only to the specific examples listed in *Patterson*: a legislature "cannot declare an individual guilty or presumptively guilty of a crime"; nor may it "validly command that the filing of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." *Patterson*, 432 U.S. at 210. The State declined any more specific constitutional justification for allowing a state to make an accused disprove sexual intent for child molestation.[5]

The State's unified field theory for evading *Winship* with thaumaturgic words is directly contrary to *Patterson*'s holding that "there are obviously constitutional limits beyond which the States may not go in this regard." *Patterson*, 432 U.S. at 210 (citation and internal quotation marks omitted). The Supreme Court has reiterated this far too frequently to consider the question less than settled. *See McMillan*, 477 U.S. at 86; *Apprendi v. New Jersey*, 530 U.S. 466, 486 (2000) ("We did not . . . [in *McMillan*] budge from the position that . . . constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense."); *Jones v. United States*, 526 U.S. 227, 243 (1999) ("The seriousness of the due process issue is evident from *Mullaney*'s insistence that a State cannot manipulate its way out of *Winship*, and from *Patterson*'s recognition of a limit on state authority to reallocate traditional burdens of proof . . . ."); *Schad v. Arizona*, 501 U.S. 624, 639 (1991) (citing *Patterson* for the proposition that "there are obviously constitutional limits beyond which the States may not go" in

---

[5] At oral argument, the Court tested these limits by hypothesizing a "Felonious Hospital Nursing" offense in which a hospital nurse is guilty of a crime if a patient dies while under the nurse's watch. As an affirmative defense, the nurse could prove that no act or omission by the nurse caused the death. Counsel for the State argued that even this would be constitutional, as it would come within the State's no-limits rule. The State's endorsement of the hypothetical is a *reductio ad absurdum* of its thesis for upholding May's conviction.

defining offenses).  The State's stance is antithetical to the very requirement of proof beyond a reasonable doubt.  It is directly contrary to Supreme Court case law on the very level of generality at which the State poses it.

**B. The Arizona Law Fails Under the Typical Supreme Court Criteria for Rejecting Unconstitutional Burden-Shifting**

Arizona's child molestation law also falls short on the Supreme Court's more focused criteria and considerations limiting states' discretion to shift burdens of proof in criminal cases.

At a high level and as has been noted, deference to the legislature's discretion ends when "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Patterson*, 432 U.S. at 201-02.   In confirming how traditions and conscience weigh in specific challenges, courts "have often found it useful to refer both to history and to the current practice of other States in determining whether a State has exceeded its discretion in defining offenses."  *Schad v. Arizona*, 501 U.S. 624, 640 (1991) (plurality opinion).  A state may not "shift[] the burden of proof as to what is an inherent element of the offense," on which long history and widespread use shed light.  *Id.*  Of particular importance to this case, "a freakish definition of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions" signals possible constitutional infirmity.  *Id.*  At the very least, the remaining elements of the stripped-down crime must define something wrongful.  *See Morrison v. California*, 291 U.S. 82, 90 (1934) ("For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance . . . .").  Additionally, "the shifting of the burden [must] be found to be an aid to the accuser without subjecting the accused to hardship or oppression."  *Id.* at 89.

For the following reasons, Arizona's burden shifting in child molestation fails readily on all these measures.

1

2

### 1. Sexual Intent Has Always Been Essential to the Crime of Child Molestation

3   Examination of both history and practice compels or at least forcefully suggests

4 the conclusion that sexual intent is essential to child molestation.  While sexual crimes

5 against children have long been punished in America, specific laws against sexual contact

6 with children are of more recent vintage.  Both the British common law and early

7 American jurisdictions typically treated sexual offenses against children under broader

8 categories, such as assault with intent to commit rape, or even rape itself.  *See* Charles A.

9 Phipps, *Children, Adults, Sex and the Criminal Law: In Search of Reason*, 22 Seton Hall

10 Legis. J. 1, 11-15 (1997).  Where such offenses did not involve sexual penetration, a

11 handful of states created separate statutes criminalizing the offense of "taking indecent

12 liberties" with children, though these laws often did not enumerate specific elements.  *Id.*

13 at 17.  Arizona's own 1913 molestation law, discussed above, likewise required that the

14 prohibited acts be carried out "with the intent of arousing, appealing to or gratifying the

15 lust or passions or sexual desires of such person or of such child."  Ariz. Rev. Stat. (Penal

16 Code) § 282 (1913).  Other states used the same language before and after Arizona did.

17 *See, e.g.*, *People v. Curtis*, 1 Cal. App. 1, 1-2, 81 P. 674 (Cal. Ct. App. 1905); *Milne v.*

18 *People*, 224 Ill. 125, 126, 79 N.E. 631, 631-32 (1906); *State v. Kernan*, 154 Iowa 672,

19 673, 135 N.W. 362, 363 (1912); *State v. Kocher*, 112 Mont. 511, 119 P.2d 35, 37 (1941).

20   Statutes of this sort became the norm across jurisdictions and persisted over time.

21 The Model Penal Code, first published by the American Law Institute in 1962, compiled

22 a single advisory corpus of preferred formulations of criminal statutes.  *See* Markus D.

23 Dubber, *Criminal Law: Model Penal Code* 7-11 (2002).  The Model Penal Code included

24 sexual crimes against children within a broader section on sexual assault, which provided

25 for criminalizing certain kinds of "sexual conduct," defined as "any touching of the

26 sexual or other intimate parts of the person for the purpose of arousing or gratifying

27 sexual desire."  ALI, Model Penal Code § 213.4 (1962).  That language endures to the

28 present.  *See* ALI, Model Penal Code § 213.4 (2015).  Today the statutes or case law of

48 out of 50 states, the District of Columbia, three U.S. territories, and the federal government require some sexual purpose for the crime of child molestation.[6]

---

[6] Currently, the vast majority of jurisdictions define the "sexual contact" requisite for child molestation as intentional touching of specified body parts for sexual arousal or gratification. *See* Ala. Code § 13A-6-60(3) (1988) (Alabama); Ark. Code Ann. § 5-14-101(10) (2009) (Arkansas); Cal. Penal Code § 288(a) (West 2010) (California); Conn. Gen. Stats. § 53a-65(3) (2013) (Connecticut); Colo. Rev. Stat. § 18-3-401(4) (2013) (Colorado); Del. Code Ann. tit. 11, § 761(f) (2015) (Delaware); Ga. Ann. Code § 16-6-4(a) (2009) (Georgia); 9 Guam Code Ann. § 25.10(8) (1979) (Guam); Idaho Code § 18-1508 (1992) (Idaho); 720 Ill. Comp. Stat. 5/11-0.1 (2011) (Illinois); Ind. Code § 35-42-4-4(4) (2016) (Indiana); Iowa Code § 709.12(1) (2013) (Iowa); Kan. Stat. Ann. § 21-5506(a) (2011) (Kansas); Ky. Rev. Stat. Ann. § 510.010(7) (West 2012) (Kentucky); La. Stat. § 14:81 (2010) (Louisiana); Miss. Code Ann. § 97-5-23(1) (2015) (Mississippi); Neb. Rev. St. § 28-318(5) (2010) (Nebraska); Nev. Rev. Stat. 201.230 (2015) (Nevada); N.H. Rev. Stat. Ann. § 632-A:1(IV) (2009) (New Hampshire); N.Y. Penal Law § 130.00(3) (2010) (New York); N.C. Gen. Stat. § 14-202.1(a) (1994) (North Carolina); Ohio Rev. Code Ann. § 2907.1(B) (2007) (Ohio); Okla. Stat. tit. 21, § 1123(A) (2015) (Oklahoma); Or. Rev. Stat. § 163.305(6) (2010) (Oregon); 18 Pa. Cons. Stat. § 3126(a) (2006) (Pennsylvania); P.R. Laws Ann. tit. 33, § 4772 (Puerto Rico); S.C. Code Ann. § 16-3-655(C) (2012) (South Carolina); S.D. Codified Laws § 22-22-7.1 (2004) (South Dakota); Tenn. Code Ann. § 39-13-501(6) (2013) (Tennessee); Tex. Penal Code Ann. § 21.11(c) (2009) (Texas); Vt. Stat. Ann. tit. 13, § 2821(2) (1999) (Vermont); V.I. Code Ann. tit. 14, § 1699 (2002) (Virgin Islands); Va. Ann. Code § 18.2-67.10(6) (2004) (Virginia); Wash. Rev. Code § 9A.44.010(2) (2007) (Washington); W. Va. Code § 61-8B-1(6) (2007) (West Virginia).

Some jurisdictions also add the purposes of abuse, degradation, or humiliation. *See* D.C. Code § 22-3001(9) (2009) (District of Columbia); 18 U.S.C. § 2246(3) (Federal); Me. Rev. Stat. Ann. tit. 17-A, § 251(1)(D) (2003) (Maine); Md. Code Ann., Crim. Law § 3-301(e) (2016) (Maryland); Mich. Comp. Laws 750.520a(q) (2015) (Michigan); Minn. Stat. § 609.341(11)(c) (2013) (Minnesota); Mo. Ann. Stat. § 566.010 (West 2016) (Missouri); Mont. Code Ann. § 45-2-101(67) (2016) (Montana); N.J. Stat. Ann. § 2C:14-1(d) (West 2012) (New Jersey); N.D. Cent. Code § 12.1-20-02(5) (2009) (North Dakota); 11 R.I. Gen. Laws § 11-37-1(7) (1999) (Rhode Island); Utah Code Ann. § 76-5-401.1(2) (West 2016) (Utah); Wisc. Stat. 948.01(5) (2015) (Wisconsin); Wy. Stat. Ann. § 6-2-301(a)(vi) (2010) (Wyoming).

Alaska does not enumerate a sexual or abusive intent requirement but does provide an enumerated exception—not a defense—for touching carried out under "normal caretaker responsibilities for a child, interactions with a child, or affection for a child." Alaska Stat. § 11.81.900(59)(B) (2013).

Child molestation statutes in Florida, Massachusetts, and New Mexico do not specify intent requirements or enumerate exceptions for, e.g., hygienic touching. *See* Fla. Stat. § 800.04(5)(a) (2014) (prohibiting certain intentional touching of anyone under 16 years of age "in a lewd or lascivious manner"); Mass. Gen. Laws ch. 265, § 13B (2008) (criminalizing "indecent assault and battery on a child under the age of 14"); N.M. Stat.

1   This virtually unanimous practice with consistent historical precedent is strong
2   evidence of the traditions and conscience of our people that count as fundamental to the
3   rights of persons charged with crimes.  *See Patterson*, 432 U.S. at 201-02.  They weigh
4   heavily in favor of sexual intent as "an inherent element of the offense" of child
5   molestation, an element in substance that the State must prove and cannot constitutionally
6   put on an accused person to disprove.

7   **2.  Arizona's "Freakish Definition of the Elements" without Any "Sinister**
8   **Significance"**

9   Arizona certainly has "a freakish definition of the elements" grounded on nothing
10  of "sinister significance."    The language of the elements describes benign and
11  constitutionally protected behavior that could only become wrongful with sexual intent—
12  the very fact the Arizona law forces the defendant to disprove.  This is convicting people
13  without proof of wrongdoing because they have not disproved the only thing that could

---

Ann. § 30-9-13(A) (2003) (criminalizing "the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts").  However, courts in all three states have gleaned requirements of something more than mere touching from the language of their respective statutes.  *See Andrews v. State*, 130 So.3d 788, 789-90 (Fla. App. 2014) ("[T]he Legislature has not defined the terms 'lewd' and 'lascivious.' But generally speaking, these words . . . usually have the same meaning, that is, an unlawful indulgence in lust, eager for sexual indulgence" (alterations and internal quotation marks omitted)); *Commonwealth v. Lavigne*, 42 Mass. App. Ct. 313, 314-15, 676 N.E. 2d 1170, 1172 (1997) (defining "indecent" touching as "fundamentally offensive to contemporary moral values…and which the common sense of society would regard as immodest, immoral, and improper" (internal quotation marks omitted));  *State v. Pierce*, 110 N.M. 76, 83, 792 P.2d 408, 415 (1990) (holding that lawful parenting behaviors are foreclosed from prosecution under § 30-9-13 because only "unlawful" touching is prohibited).

Hawaii may be the only jurisdiction other than Arizona that does not require sexual intent for a child molestation offense.  The state's penal code outlaws "knowingly subject[ing] to sexual contact another person who is less than fourteen years old or caus[ing] such a person to have sexual contact with the [offender]."  Haw. Rev. Stat. § 707-732(1)(b) (2009).  The Hawaii legislature in 1986 rewrote its definition of "sexual contact" specifically to cut out sexual gratification as a requirement.  *See* Haw. Rev. Stat. § 707-700 (2016); *State v. Kalani,* 108 Hawai'i 279, 285, 118 P.3d 1222, 1228 (2005) (rejecting a constitutional vagueness challenge).  No court has addressed whether some sexual intent requirement is implied, which party would have to prove or disprove it, or whether it would be unconstitutional for a defendant to have to disprove it.

- 19 -

color their conduct as culpable.

Indeed, the "affirmative defense" here is not an explanation, avoidance, or justification. Nor is it a diminishment of culpability, offense level, or punishment. The defense is proof of a negative. It is refutation of the entire wrongfulness that may be lurking in any of the extensive prohibited conduct. When a law as written criminalizes entirely benign intentional conduct and has no mental state requirement to separate the bad from the good, making disproof of a state of mind a complete "defense" retains state of mind as central to the crime.

There is a grievous threat to due process of law from making defendants disprove their own state of mind for conduct that is not wrongful in any sensible way without a bad mental state. The dissenting Justices in *Patterson* feared that under the Court's rule, which they thought overly broad and difficult to apply:

> For example, a state statute could pass muster under the only solid standard that appears in the Court's opinion if it defined murder as mere physical contact between the defendant and the victim leading to the victim's death, but then set up an affirmative defense leaving it to the defendant to prove that he acted without culpable mens rea. *The State, in other words, could be relieved altogether of responsibility for proving anything regarding the defendant's state of mind, provided only that the fact of the statute meets the Court's drafting formulas.*

*Patterson*, 432 U.S. at 224 n.8 (Powell, J., dissenting) (emphasis added). But even the dissenters thought their hypothetical statute so "egregious" that they had "no doubt that the Court would find some way to strike [it] down . . . ." *Id.* at 225 n.9. The *casus terribilis* the dissenters posed—no mental state requirement for widely criminalizing benign conduct with the defendant charged to disprove bad mental state—has arrived. It is in Arizona and people are in prison for it, May for the rest of his natural life.

These considerations, too, show the Arizona law has gone over the constitutional bounds of legislative discretion in defining crimes and putting burdens of proof on the accused.

### 3. Arizona Repudiated Its Own History When It Shifted the Burden of Disproving Sexual Intent to Defendants

The evolution of Arizona's child molestation law has an unmistakable trajectory. It expressly required sexual intent when first enacted in 1913.  When enacted again in 1965, it was judicially construed to require prosecutorial proof of sexual intent beyond a reasonable doubt. Then the legislature only required prosecutors to do so once the defendant denied sexual intent.  Now a defendant must disprove sexual intent by a preponderance of the evidence.  *See* Ariz. Rev. Stat. § 13-205(A) (2006); *Holle II*, 240 Ariz. at 308, 377 P.3d at 205.  In form, Arizona has written sexual intent out of its child molestation law—but in substance it is still at the center of the crime.  All that has changed is who has to prove or disprove it.

The fact that a previously required element has been formally transferred to the defense does not automatically defeat the law.  A legislature could initially require elements that go beyond any constitutional or common sense minimum of wrongfulness and later opt to remove them.  *See Patterson*, 432 U.S. at 209.  But in child molestation, sexual intent is not lagniappe.  It is essential to separate wrongful conduct from everyday child touching in parenting, hygiene, medical care, athletics, and other non-culpable acts within the stated elements of the Arizona crime.

### C. Application of Due Process Analysis to the Arizona Burden-Shifting Scheme

Measured against the Supreme Court's standards and criteria, the burden-shifting scheme in Arizona's child molestation law violates due process plain and simple.  The defendant bears the burden of disproving the very thing that makes child molestation child molestation.  There are "obviously constitutional limits beyond which the States may not go" in redefining offenses, *Patterson*, 432 U.S. at 210, and this is obviously one of the limits.

In its recent decision on this same question, the Arizona Supreme Court excused this burden-shifting on the ground that other criminal statutes occasionally sweep innocent conduct within their general language.  *Holle II*, 240 Ariz. at 309, 379 P.3d at

206.[7]  From the fact that sometimes happens without constitutional infirmity, the state supreme court implies that any law may intentionally and expansively sweep innocent conduct within its prohibition by omitting traditional and common sense elements of the offense—leaving it to the selected defendants to prove their innocence.  The Arizona Supreme Court's obvious fallacy is that uncertainty about line-drawing does not prove there are no lines.  Moreover, language cannot capture perfectly and only the events in the world of interest.  But it can try in good faith to do so and come reasonably close.  The Arizona statute does neither.

Shifting what used to be an element to a defense is not fatal if what remains of the stripped-down crime still may be criminalized and is reasonably what the state set out to punish.  *See Patterson*, 432 U.S. at 209.  Here, however, section 13-1410 criminalizes diapering and bathing infants and much other innocent conduct.  *See Holle II*, 240 Ariz. at 308-09, 379 P.3d at 205-06.  More than just innocent, some such conduct is constitutionally protected.  *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").  *See also Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).  As May's attorney pointed out at oral argument, the statute even criminalizes circumcision of babies, a ritual practiced in

---

[7]  Citing to Arizona's assault statute, which criminalizes "[i]ntentionally, knowingly or recklessly causing any physical injury to another person," Ariz. Rev. Stat. § 13-1203 (1978), the court noted that "[a] medical provider arguably commits an assault whenever he or she causes *any physical injury* to his or her patient, but that doctor can assert the affirmative defense of consent."  *Holle II*, 240 Ariz. at 309, 379 P.3d at 206 (emphasis in original).

That example stands quite apart from child molestation.  Arizona's formulation of assault faithfully tracks the traditional elements.  *See, e.g.*, 1 William Hawkins, A Treatise of the Pleas of the Crown 133 (3d ed. 1739) (defining "assault" under English common law as "an Attempt, or Offer, with Force and Violence, to do a corporal Hurt to another").  Consistency with longstanding historical precedent, while not dispositive, carries great weight in establishing comportment with due process.  *See Schad*, 501 U.S. at 650 (Scalia, J., concurring) ("It is precisely the historical practices that *define* what is 'due.'").

several religious faiths.  *See generally* Geoffrey P. Miller, *Circumcision: Cultural-Legal Analysis*, 9 Va. J. Soc. Pol'y & L. 497 (2002).

Dismissing this problem, the *Holle II* court assured that "prosecutors are unlikely to charge parents, physicians, and the like when the evidence demonstrates the presence of an affirmative defense under § 13-1407."  *Holle II*, 240 Ariz. at 308-09, 379 P.3d at 205-06.  But cases of just this sort have been brought even in jurisdictions that require sexual intent for conviction.  *See* Camille Gear Rich, *Innocence Interrupted: Reconstructing Fatherhood in the Shadow of Child Molestation Law*, 101 Cal. L. Rev. 609, 625 (2013) (citing from multiple jurisdictions cases of "disputes in which a father is [criminally] accused in connection with giving a child a bath; wiping his daughter after going to the bathroom; dealing with incontinence issues; giving kisses in the context of play, after a bath, or diaper change; and even tucking his daughters into bed").  The rehearing papers in *Holle II* itself recounted a recent prosecution in Pima County, Arizona, where a father was put to his proof through trial for child molestation while bathing his daughter.  He was acquitted.  (Doc. 59-1 at 1-5.)

Our criminal justice system does rely heavily on the sound discretion of prosecutors.  But discretionary enforcement assumes laws that by their terms and in good faith distinguish the prohibited wrongful conduct from innocent conduct.  Just trusting the government to do the right thing is poor dressing for constitutional wounds.  *See United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."); *cf. McDonnell v. United States*, — U.S.  —, 136 S. Ct. 2355, 2372-73 (2016) ("[W]e cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'").  A regime in which everyone starts out guilty and law enforcement decides who has to prove himself innocent is not the rule of law.  It is a police state, no matter how much we trust the police.

To be clear, this Court concludes only that the burden-shifting scheme of Arizona's child molestation law violates the Fourteenth Amendment's guarantees of due

process and of proof of guilt beyond a reasonable doubt.  May has not made an overbreadth challenge or any other constitutional challenge.  The question here is whether due process permits Arizona to remove the essential wrongfulness in child molestation and place the burden of disproving it upon people engaged in a wide range of acts, the vast majority of which no one could believe the State meant to punish.  Because the resulting nominal offense has no element that distinguishes culpable from innocent or constitutionally protected conduct, the answer is no.  Arizona's law exceeds the constitutional limits identified in *Patterson*.

The Supreme Court has not assayed a single formula to separate all the permissible burden-shifting from all the impermissible, and neither does this Court.  But a number of tests mark out some of the permissible and some of the impermissible.  They have been discussed above and the Arizona law comes up short on all of them.  A most salient test is whether the only quality that separates a small amount of wrongful conduct from a great sweep of prohibited benign conduct is the very factor the accused is charged with disproving.  An alternative formulation is this: If the "affirmative" defense is to disprove a positive—and that positive is the only wrongful quality about the conduct as a whole—it is a nearly conclusive sign that the state is unconstitutionally shifting the burden of proof for an essential element of a crime.

To think otherwise here, one would have to believe that Arizona really thinks children's hygienic care, bathing, medical care, athletics, religious circumcision, and all other occasions for touching private parts are wrongful in themselves without more.  But they are not inherently wrongful, and the legislature surely did not mean to prohibit all such acts apart from the sexual intent of the actor.  If the State says the legislature did so mean, this Court is not fooled.  No one will be fooled.  The Arizona Supreme Court was not fooled because they excused the law on the initially intuitive but illegitimate basis that the police will know who can prove the defense and not prosecute them.  *See Holle II*, 240 Ariz. at 308-09, 379 P.3d at 205-06.  That has nothing to do with whether people who are prosecuted can be made to prove their innocence.

1    The state supreme court's intuition does aid understanding of what this statute

2    really is.  The intuition that the State will only charge people who cannot disprove sexual

3    intent may leave some comfortable that the right people are being convicted.  But it is the

4    very role of proof beyond a reasonable doubt to sort out who should be convicted from

5    who should not.  It is a limitation on the State's means of convicting, and it does not yield

6    because the State picks the right people to prosecute.  Reliance on that intuition reveals

7    again what the State is doing here: freeing itself from proving an essential element of

8    guilt because the prosecution has a pretty good idea who is guilty and the accused

9    probably won't disprove it.  To give that thought any purchase is to repudiate at its core

10   the constitutional mandate that the state prove guilt beyond a reasonable doubt.

11   It is entirely obvious that sexual intent remains at the core of Arizona's child

12   molestation law, and no amount of oxymoronic labels about affirmative disproof

13   disguises that.  Counsel for the State deserves credit for candor in positing his defense on

14   a complete absence of any constitutional limit on a state's ability to shift burdens of proof

15   on elements of crimes to defendants, as long as it uses the magic words.

16   **III.    Cause and Prejudice: Ineffective Assistance of Counsel**

17   That said, May defaulted on the constitutional claim by not raising it at trial.  He

18   contends he has shown cause and prejudice because his trial attorney was ineffective for

19   failing to challenge the constitutionality of Arizona's statute and the jury instructions

20   given pursuant to it.  May raised his claim of ineffective assistance of counsel at the

21   proper time in his post-conviction proceeding and exhausted it in the state courts.

22   Both the state courts and the R&R reject May's ineffectiveness claim solely on the

23   grounds that he cannot show prejudice under *Strickland*.  The Court thus addresses that

24   prong first.

25   **A. Prejudice**

26   To prove prejudice, May must show "there is a reasonable probability that, but for

27   counsel's unprofessional errors, the result of the proceeding would have been different."

28   *Strickland*, 466 U.S. at 694.  He need not show this with certainty, but merely with "a

1   probability sufficient to undermine confidence in the outcome." *Id.*

2       This Court rejects the R&R's conclusion that May cannot show prejudice.  Where

3   state courts have reviewed a claim on the merits, a federal habeas court is limited to

4   determining whether the state court's decision is "contrary to, or involved an

5   unreasonable application of" settled Supreme Court law, or that is "based on an

6   unreasonable determination of the facts."  28 U.S.C. § 2254(d).

7       **1.  The State Courts Unreasonably Applied Federal Law**

8       On habeas review, a federal court must "determine what arguments or theories

9   supported, or could have supported, the state-court decision . . . ."  *Harrington*, 562 U.S.

10  at 88.  The best indication of this is the reasoning of the state courts.  And where such

11  reasoning is summarily affirmed (or review denied) by a higher state court, "silence

12  implies consent, not the opposite—and courts generally behave accordingly, affirming

13  without further discussion when they agree, not when they disagree, with the reasons

14  given below."  *Kernan v. Hinojosa*, — U.S. —, 136 S. Ct. 1603, 1605-06 (2016) (quoting

15  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991)) (internal quotation marks omitted).

16      The superior court on post-conviction review disavowed making any ruling on the

17  merits of May's constitutional claim.  *See* Doc. 1-11 at 3 ("Defendant's claim that the

18  Arizona child molestation statute is unconstitutional is precluded.").  But the court also

19  ruled that May's trial counsel was not ineffective because the appeal he forfeited would

20  not have succeeded.  (Doc. 1-13 at 5-6.)  The court of appeals adopted the superior

21  court's reasoning (Doc. 1-17 at 12) and the Arizona Supreme Court denied review.  (Doc.

22  1-20 at 2.)  This Court therefore reviews the reasoning and conclusion set forth by the

23  superior court on post-conviction review.

24      After a full evidentiary hearing, the superior court judge ruled on May's

25  ineffectiveness claim as follows:

26

27      Defendant claims ineffective assistance of trial and appellate counsel in
    failing to challenge the constitutionality of the child molestation statute. His

28      expert did not opine on whether such a challenge would have been

successful. (R.T. of Sept. 7, 2011, at 122-125).

Defendant must show a reasonable likelihood that a challenge to the constitutionality of the child molestation statute would have been successful in order to demonstrate prejudice. *State v. Berryman,* 178 Ariz. 617, 622, 875 P.2d 850, 855.

The Arizona Court of Appeals held that sexual interest is not an element of the crime of child molestation and that absence of sexual interest is an affirmative defense regarding motive. *State v. Simpson,* 217 Ariz. 326, ¶¶ 18-19, 173 P.3d 1027, 1030 (App. 2007). Defendant's appellate attorney was aware of this opinion. (R.T. of Sept. 7, 2011, at 69-70.)

Arizona's child molestation statute is not significantly different that [sic] the murder statutes approved in *Patterson v. New York*, 432 U.S. 197 (1997). Under *Patterson,* the Arizona child molestation statute does not violate the constitution of the United States.

Defendant has failed to show a reasonable likelihood that either his trial or appellate attorney would have been successful in challenging the constitutionality of the child molestation of the State of Arizona and has failed to establish prejudice.

(Doc. 1-13 at 5-6).

The superior court found May suffered no prejudice without deciding whether May's trial counsel performed deficiently. "It is past question that the rule set forth in *Strickland* qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391 (internal quotation marks omitted). "That the *Strickland* test of necessity requires a case-by-case examination of the evidence . . . obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by [the Supreme] Court." *Id.* (citation and internal quotation marks omitted).

The superior court's reasons for finding no prejudice to May are not just erroneous but also unreasonable. First, the court noted that May's expert did not opine on whether a constitutional challenge would have been successful. But that is a question of law for a judge regardless of expert testimony, which is inadmissible in evidence. It is simply not

relevant whether May's expert testified about this.  To the extent this led the superior court to find no prejudice, that conclusion was unreasonable.

Second, the superior court noted that the state court of appeals in *Simpson* held sexual intent is not an element of child molestation in Arizona and the absence of sexual interest is an affirmative defense.  But *Simpson* was not decided until after May's trial.  It held only that the child molestation law places the burden on the defendant to disprove sexual interest, not that it is constitutional to do so.  The *Simpson* case has no bearing on whether May's trial counsel was ineffective for failing to challenge the law's burden-shifting scheme on constitutional grounds.

Third, the superior court said the Arizona statute "is not significantly different than" the statute in Patterson so there was no prejudice from not challenging it.  But that is both incorrect and unreasonable.  While missing a traditional element of murder, the statute in *Patterson* required the government to prove beyond a reasonable doubt something the state could make a stand-alone crime: intentional killing.  *Patterson*, 432 U.S. at 209.  The *Patterson* Court yielded two holdings: that that burden-shifting scheme did not deprive the defendant of due process, *id.* at 205-06, and more broadly, that within "constitutional limits," prosecutors need not "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused," *id.* at 210.  But just as the Constitution does not require prosecutors to disprove every affirmative defense, *Patterson* is equally clear that the Constitution does not free prosecutors from ever having to prove anything labeled as an affirmative defense.

One struggles to reconstruct the omitted reasoning behind the bare assertion that the statute in *Patterson* and the one at issue here are "not significantly different."  The likeliest candidate is that they share a common form: each omits one element traditionally part of the relevant offense and relabels it an affirmative defense a defendant must prove.  These similarities of form do exist.  But it is both incorrect and unreasonable to ignore substance altogether.  *Patterson* itself said that while the state need not disprove every affirmative defense, "there are obviously constitutional limits beyond which the States

may not go in this regard." 432 U.S. at 210. To conclude that a statutory scheme relabeling anything as an affirmative defense is constitutional *per se* does violence to that holding.

The precise constitutional question here is whether Arizona may burden a defendant with disproving an essential aspect of the wrongfulness of child molestation. The statute does that by criminalizing wide swaths of conduct with no element of the crime to differentiate between culpable, innocent, and constitutionally protected conduct. By prohibiting "touching, fondling or manipulating" of a child's private areas, Arizona's child molestation law criminalizes sexual fondling of children, sitting a child down in a chair, diapering and bathing an infant, medical treatment, and religious circumcision alike. *See* Ariz. Rev. Stat. § 13-1410(A) (2009). While sexual fondling is criminally culpable behavior, the rest of the enumerated conduct is either innocent or even constitutionally protected. A law broadly criminalizing everyday innocent behavior that uses an affirmative defense as the marker for the only subset that is wrongful goes beyond *Patterson*'s holding and reasoning. Including constitutionally protected behavior within that broad prohibition goes farther yet.

In sum, the superior court summarily and "unreasonably extend[ed]" *Patterson*'s holding "to a new context where it should not apply." *See Williams*, 529 U.S. at 407. This is also an objectively unreasonable application of *Strickland*.

## 2.  It Is Likely May Would Have Obtained a Different Outcome

The superior court's application of *Strickland* was unreasonable for another reason: the conclusion that May suffered no prejudice is refuted on this record. The *Strickland* measure for prejudice is a "reasonable probability" of a different outcome but for the default. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The R&R concludes that even if relieved of the burden of proving himself innocent, May still would have been convicted unanimously given the volume of evidence against him. (Doc. 35 at 56-57.) That is a remarkable conclusion in light of the

actual history of this trial.  None of the state courts so found.  This Court rejects that conclusion.

As it was, the jury was deadlocked after two full days of deliberation.  On January 12, the jury submitted a note to the judge stating: "We are a hung jury because the not guilty side doesn't believe there is enough evidence and the guilty side believes there is." (Doc. 22-2 at 71.)  The judge called the jury back and gave a supplemental instruction on how they might restructure their discussion.  (Doc. 22-5 at 179.)  Later, a second note from the jury indicated continuing deadlock and sought clarification of the "reasonable doubt" standard, stating that some jurors believed there was reasonable doubt on the evidence presented while others did not.  (Doc. 22-2 at 72.)  The trial judge declared a mistrial and discharged the jury but shortly thereafter allowed them to resume when they asked to do so.  (Doc. 35 at 21-22.)  Only after a weekend recess and an additional full day of deliberation did the jury finally reach a verdict: conviction on five counts and acquittal on two counts.  (Doc. 22-5 at 182, 188.)

Had the trial judge instructed the jury that the state must prove sexual intent beyond a reasonable doubt, it is reasonably probable that May would not have been convicted.  There is certainly "a probability sufficient to undermine confidence in the outcome."  *See Strickland*, 466 U.S. at 694.  Given how close it was under the prejudicial instruction actually given and the two deadlocks on reasonable doubt, the *Strickland* test for prejudice is readily shown here.  In particular, there is a reasonable probability the jury would have remained deadlocked, even if only a single juror harbored reasonable doubt.  *See Buck v. Davis*, — U.S. —, 137 S. Ct. 759, 776 (2017) (formulating district court's prejudice inquiry as whether habeas petitioner had demonstrated a reasonable probability that in sentencing phase, "at least one juror would have harbored a reasonable doubt" as to defendant's future dangerousness); *Cone v. Bell*, 556 U.S. 449, 452 (2009) (remanding petitioner's habeas claim for district court to determine whether there was a reasonable probability withheld *Brady* evidence "would have altered at least one juror's assessment of the appropriate penalty for [petitioner's] crimes"); *Wiggins v. Smith*, 539

U.S. 510, 537 (2003) (finding that, where jury did not hear mitigating evidence before sentencing defendant to death, "there is a reasonable probability that at least one juror would have struck a different balance" had mitigating evidence been presented).

The State argues the jury still would have convicted May because they found he touched the victims "intentionally or knowingly." The State contends such findings can only be explained as the jury inferring sexual intent beyond a reasonable doubt. (Doc. 22 at 189-90.) This is a bold contention. It means that intentional and knowing necessarily subsumes sexual intent, which then can never be disproven. Any instruction on sexual intent becomes a redundancy and might as well be omitted. It is enough to reject this that it is in defiance of the statute as written.

In any event, intentional and knowing is not a substitute for sexual intent. One can touch a child intentionally or knowingly without also having a sexual intent. Caregivers diapering children do this all the time, as do all other benign actors within the literal sweep of the stated elements of the Arizona crime. Even if such a connection were inferable, no reviewing court may ordain that the jury did draw that inference. To do so would violate May's constitutional rights both to proof beyond a reasonable doubt and to jury trial.

Moreover, finding prejudice is not limited to predicting what a specific judge or jury would have done. The entire course of proceedings must be considered to determine whether a different result was reasonably likely but for counsel's missteps. *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (holding that a defendant makes out a claim of ineffectiveness when deficient performance "deprives a defendant of an appeal that he otherwise would have taken"); *Burdge v. Belleque*, 290 F. App'x 73, 79 (9th Cir. 2008) (attorney's failure to preserve key issue for appeal sufficed for showing of prejudice under *Strickland*); *Gov't of Virgin Islands v. Vanterpool*, 767 F.3d 157, 168 (3d Cir. 2014) (holding that trial counsel's "failure to preserve a viable First Amendment challenge" to predicate statute constituted prejudice under *Strickland*); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1269 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 815

- 31 -

(2016) (reviewing prejudice based on "whether [the defendant] had a reasonable likelihood of securing a new trial if the attorney had properly preserved" the relevant issue for subsequent review); *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310, 1315 (11th Cir. 2003) ("[T]he prejudice showing required by *Strickland* is not always fastened to the forum in which counsel performs deficiently: even when it is *trial* counsel who represents a client ineffectively in the *trial court*, the relevant focus in assessing prejudice may be the client's appeal."). It is a question of law, not of psychology, how an appeal should and would have turned out if preserved and taken.

There is a reasonable probability that May would have obtained a different outcome had the constitutional challenge to Arizona's child molestation law been preserved. Certainly there is "a probability sufficient to undermine confidence in the outcome." To conclude otherwise is an objectively unreasonable application of *Strickland*'s prejudice inquiry.

**B. Deficient Performance**

For an ineffectiveness claim under *Strickland*, May must also show that his attorney's performance was deficient. The state courts did not address this, finding instead that May suffered no prejudice either way. This Court therefore reviews deficiency of performance de novo. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing de novo element of petitioner's *Strickland* claim not reached by state courts).

Under *Strickland*, an attorney's performance is deficient if it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Supreme Court has declined to articulate more specific guidelines, stating, "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). A habeas court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The defendant must "overcome the strong presumption that counsel's performance was within the wide range of reasonable professional assistance and might be considered

sound trial strategy." *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011) (internal quotation marks omitted). But that presumption is based on the need to choose among alternative and sometimes incompatible trial strategies—or at least not to forfeit one's credibility before the jury with weak strategies that detract from stronger ones.

At the hearing on his state post-conviction relief petition in 2011, May called as an expert Michael Piccarreta, a seasoned criminal defense attorney with extensive professional credentials, including previous expert testimony on ineffective assistance of counsel. (Doc. 23-9 at 137-38.) Piccarreta testified that the National Legal Aid and Defenders Association considers it standard criminal defense practice to "review [the statute charged] for constitutional issues." (Doc. 23-9 at 143.) He said the burden-shifting scheme of Arizona's child molestation law "jumps out at you that it's a problem" and that a standard course of action would have been to file a motion to dismiss the charges so that, at the very least, "you have preserved the issue for higher courts." (Doc. 23-9 at 145.) Piccarreta said that "particularly with the circumstances of this case, that failure to raise the constitutionality of the statute and the switching the burden was ineffective assistance of counsel." (Doc. 23-9 at 123-25.) On cross-examination, when asked whether attorneys who failed to raise constitutional challenges in other child molestation cases were ineffective, Piccarreta stated that in his opinion

> if you have a case like this where there's lack of motivation is an issue [sic], then it should be raised. It's not a mountain of work to file a motion to dismiss. The judge rules on it, you win, mazeltov [sic]. You lose, you've preserved it . . . for future courts.

(Doc. 23-9 at 169.) This Court understands Piccarretta's opinion to be that it was ineffective for May's trial lawyer to fail to raise and preserve the federal constitutional challenge at all. One way to do that would have been to file a motion to dismiss. Another would have been to object on constitutional grounds to the jury instruction. It is not necessary to have done it one way or the other as long as it was done.

This Court fully agrees with Piccarretta's opinion based also on the Court's own

knowledge and experience.  The Court also concludes Thompson performed deficiently even without relying on expert testimony.  It should have been obvious that the burden-shifting scheme presented a serious constitutional question that could have been dispositive for May.   At the time, there was no appellate case assessing the constitutionality of Arizona's 1997 statutory amendment.  Even if there had been a case on point, the constitutional question was a matter of federal law amenable to vindication in later federal court review.  Thompson performed deficiently by failing to recognize and act on this.  *See Hinton v. Alabama*, — U.S. —, 134 S. Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").  Minimal competence required preserving the obvious federal issue.  *See Vanterpool*, 767 F.3d at 834 (remanding on performance prong of *Strickland* where counsel's failure to raise constitutional challenge raised factual question of whether it was "attributable to an ignorance of the law").

Moreover, in May's post-conviction proceedings, Thompson admitted to recognizing the unusual makeup of the law despite framing the problem solely as one of interpreting the state statute.  (Doc. 23-9 at 40.)  Though the trial judge invited briefing on the burden of proof jury instructions, Thompson filed nothing.  (*Id.* at 66.)

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  That usual presumption, however, cannot stand on this record.   When questioned about why he did not challenge the constitutionality of the burden-shifting scheme, Thompson had no explanation.  He did not articulate any reason, strategic or otherwise, for having foregone a constitutional challenge.  It is clear beyond question that there was no strategic or other benefit to May in not preserving the constitutional challenge.  It would have cost no material time or resources and could not have undercut any other strategy or course of action.  There is no reason, tactical or other, for failing to preserve the federal constitutional claim.

Piccarreta's opinion reflected as much. But the undersigned need only rely on 30 years at the trial and appellate bars, occasional expert testimony on standard of care for trial and appellate lawyers, and thirteen years as a judge of this Court presiding over more than 3,000 criminal cases. It is plain that May's trial counsel fell well below an objective standard of reasonableness under prevailing professional norms. Trial counsel's performance was constitutionally deficient. The performance and prejudice prongs of *Strickland* have both been met, and any contrary conclusion would be unreasonable. The ineffective assistance establishes cause and prejudice for May's default on his constitutional challenge.

## IV.   Constitutional Challenge

Having established cause and prejudice, May can present here his constitutional challenge to Arizona's child molestation statute and to the jury instruction given pursuant to it.

If the state court had decided the constitutional question on the merits, this Court would be limited to assessing whether the state court's decision "was contrary to, or involved an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d). The superior court on post-conviction review took a one-sentence peek at the merits through the lens of finding no prejudice from defaulting on the constitutional challenge. Technically, that was a finding on likely prejudice, not a finding of constitutionality. But even if the superior court's findings were to count as a ruling on the constitutional merits, this Court has already concluded in Section III(A)(1) above that applying *Patterson* to uphold the Arizona law would have been an unreasonable application of *Patterson*.

More likely, this Court is charged with de novo review because the state court's assessment of the constitutional question was not on the merits. The superior court specifically declined to review the merits of May's constitutional claim since he had defaulted on it by failing to raise it at trial. (Doc. 1-11 at 3.) The court of appeals did the same. (Doc. 1-17 at 6.) The state courts did not "decide[] the petitioner's right to post

conviction relief on the basis of the substance of the constitutional claim advanced," but rather "den[ied] the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). Since no state court addressed the merits, this Court must decide the constitutional question de novo. *See Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005).

Whether under de novo review or deferential review, the burden-shifting scheme of sections 13-1410 and 13-1407(E) of the Arizona Revised Statutes as applied in this case violates the Constitution's guarantee of due process of law—specifically, May's right to be convicted of a crime only if the state proves each element beyond a reasonable doubt and to have the jury so instructed. *See* Section II, *supra.*

**V.    Harmless Error**

"[Habeas] relief is proper only if the federal court has 'grave doubt whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, — U.S. —, 135 S. Ct. 2187, 2197-98 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)) (internal quotation marks omitted). The likelihood of a different outcome has been discussed thoroughly above. *See* § III(A)(2), *supra*. It is reasonably probable that the jury instruction as given had "substantial and injurious effect or influence" over May's verdict. There is a significant likelihood May would not have been convicted had constitutional instructions been given.

It violated May's right to due process of law to be assigned the burden of proving his own lack of sexual intent.

IT IS THEREFORE ORDERED that the Report and Recommendation (Doc. 35) is ADOPTED IN PART and REJECTED IN PART as provided in this order.

IT IS FURTHER ORDERED that petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor of Petitioner Stephen Edward May against Respondent Charles L. Ryan that Respondent release Petitioner from custody forthwith.

1    IT IS FURTHER ORDERED that Respondent Attorney General Thomas Horne

2    and successors of office, who do not have custody of Petitioner, are DISMISSED as

3    improper parties respondent in a federal habeas corpus proceeding.

4        The Clerk shall terminate this case.

5        Dated: March 28, 2017.

6

7        _____

8        Neil V. Wake
         Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28